HAROLD L. ELLIS *vs.* BROCKTON PUBLISHING COMPANY.

Plymouth. January 14, 1908. — May 20, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Libel and Slander. Damages. Statute. Words,* " Actual injury."

In an action for libel, the question whether the matter complained of as libellous was published of and concerning the plaintiff, if it requires the consideration of extrinsic circumstances and is not merely the interpretation of an instrument in writing, is a question of fact for the jury.

*It may be doubted* whether the provisions of R. L. c. 173, § 92, in regard to the effect of a retraction of a libel or of an offer to publish a retraction, have any application to the publication of a retraction before an action is brought.

In an action against the proprietor of a newspaper for libel, the defendant may show in reduction of damages, irrespective of any statute, that before the action was brought and immediately upon learning that the libellous article had appeared in his newspaper he published a retraction complete in character and conspicuous in position.

In this Commonwealth where the recovery of vindictive, exemplary or punitive damages never has been allowed, the damages recoverable in an action for libel

or slander invariably have been held to include compensation for wounded feelings as well as for loss of reputation, and the mental suffering is as strictly actual damage as the pecuniary loss through injury to reputation.

R. L. c. 173, § 92, providing for the admission in evidence in an action for libel of the publication of a retraction of the libel by the defendant after having given notice in writing to the plaintiff, before the answer is required to be filed, of his intention to publish such retraction, so far as it relates to the effect of such retraction upon the damages recoverable, is merely declaratory of the common law, and the provision that under the circumstances stated in the statute the plaintiff "shall recover damages only for the actual injury sustained; but in no action of libel shall exemplary or punitive damages be allowed " in no way changes the law but merely emphasizes the fact that punitive damages are not recoverable here.

TORT by a minor sixteen and a half years of age, by his next friend, against a corporation publishing the Brockton Times for the publication of an alleged libel of and concerning the plaintiff in that newspaper in Brockton on November 20, 1906. Writ dated December 17, 1906.

In the Superior Court the case was tried before *King*, J. It appeared that the alleged libel was the story of a breaking and entering and larceny in Worcester, and that the defendant had taken the story from the Worcester Telegram, a newspaper published in Worcester, and in doing so had changed the name of " Harry Ellis," described as of Brockton, to " Harold L. Ellis," which was the name of the plaintiff, supposing that the plaintiff was the person referred to, which was not the case, and a paragraph was inserted giving the plaintiff's address and mentioning facts tending to identify him, that on the day of the publication the plaintiff went with his mother to the office of the defendant, and the mistake was explained in the next publication of the paper. The evidence was conflicting as to the promptness with which the mistake was corrected in a bulletin that was placed in the window of the defendant's office.

The defendant asked the judge to make, among others, the following rulings :

" 1. On all the evidence the jury should find for the defendant.

" 2. On all the evidence the plaintiff is entitled to nominal damages only."

" 4. The plaintiff is not entitled to damages for any alleged injury to his feelings or for alleged mental suffering ; nor is he entitled to damages for alleged injury to his character or reputation."

" 6. [The name used is not conclusive in determining the meaning of a libel in respect to the person referred to therein.] If, therefore, the jury find that so much of the alleged article as has not been shown to be true of Harold L. Ellis referred to another person, one Harry Ellis, for instance, then their verdict should be for the defendant."

The judge refused to make any of these rulings except the first sentence of the ruling numbered six, which · is enclosed in brackets. He left to the jury the question whether the words charged as libellous were spoken of and concerning the plaintiff.

Upon the question of damages the judge instructed the jury as follows : " If you find that some part or all of what was pub-. lished by the defendant was published of and concerning this plaintiff, then you are to determine what injury, if any, he has suffered thereby. Now that is a question entirely for the jury to determine. It is for you to say, if you reach that point, what the plaintiff has suffered, if anything has been published of him libellous in nature. The plaintiff has said, testifying in his own behalf, that he suffered in his feelings. I charge you that that is an element which you may take into account, if you reach the question of damages, and if you believe the plaintiff's testimony ; and in that regard you have the testimony of the plaintiff's father and mother. How much he has suffered in his feelings, if any, it is for you to determine. And if you determine he has suffered, it is for you to determine what the compensatory damages, actual damages, are. Now injury to feelings may be a substantial injury, and in that respect it depends upon who the party is; his age, his social standing, his connections, his business. All these circumstances, and others which will come to your attention, you have heard. You are to determine, if you reach that point, whether his reputation has in any respect been harmed. For it is his reputation and his standing, not his character, that is to be affected."

Upon the question of retraction the judge instructed the jury as follows : " Did the defendant, the publishing company, immediately, as soon as it reasonably could, make adequate retraction? You are the judges of that under all the circumstances. You will have submitted to you the account which they published. They claim that they published equally conspicuously

a complete retraction so far as this plaintiff is concerned, and so that if any one had thought that it referred to this plaintiff, they should see that it did not refer to this plaintiff. Whether that is adequate is for you to determine."

The jury returned a verdict for the plaintiff in the sum of $154; and the defendant alleged exceptions to the refusals to rule and to such parts of the judge's charge as were inconsistent with its requests.

*R. W. Nutter*, for the defendant.

*F. E. Sweet*, for the plaintiff, submitted a brief.

. RUGG, J.   The question whether the article was published of and concerning the plaintiff was properly left to the jury to be determined as a fact.   It is only where there is no ambiguity as to the meaning of the language used, in connection with all the attendant circumstances, that it becomes a question of law. *Barrows* v. *Bell*, 7 Gray, 301.   But it has been said frequently that this is usually a question of fact.   *Hanson* v. *Globe Newspaper Co.* 159 Mass. 293.   The published article described the plaintiff by his right name, and it contained at least one paragraph, which concededly referred to events in his life.   This identified him as its subject.   Although there were other statements which, to those intimately acquainted with his work and residence, might have been known not to be true of him, yet they are so connected and interwoven with the other assertions, that, plainly, it could not have been ruled as matter of law not to refer to the plaintiff.   The structure of the article, published by the defendant, was such that it cannot reasonably be thought to refer to two different persons.   It conveys no such intimation to the mind of the ordinary reader.

On the day when the defamatory article appeared in the Brockton Times, the plaintiff with his mother called at the office of the defendant, and pointed out to its agents the error, so far as it concerned the plaintiff.   The agent of the defendant said that everything would be done to set the matter right, and in the next issue of the defendant's newspaper, a retraction was printed in a conspicuous place.   No written notice was given by the defendant to the plaintiff or his attorney of an intention to publish the retraction.   It was published as soon as possible after the interview between the plaintiff and the agent of the

defendant. These events occurred before action was brought. The defendant contends that R. L. c. 173, § 92, applies. It is extremely doubtful whether this statute touches these facts. No " notice in writing " was given nor was any copy of the proposed retraction shown by the defendant to the plaintiff or his attorney, so that the procedure pointed out by the statute was not followed. There is ground for the argument that the statute was intended to be effective only after action brought, and not before, to which force is added from the fact that in some jurisdictions it has been held that a retraction published after the commencement of an action is not admissible in evidence. *Scripps* v. *Reilly*, 38 Mich. 10. *Constitution Publishing Co.* v. *Way*, 94 Ga. 120. The effect of the publication of a retraction has never been presented for decision in this Commonwealth. The publication of an ample retraction immediately upon learning that a libellous article has appeared in his columns, by the proprietor of a newspaper, is evidence tending to show an absence of malice. The practical value of such evidence is probably less here, where punitive or exemplary damages are not allowed, than in States where recovery of such damages is permitted. But it has been said that "no doubt a manifestation of malevolent motives might enhance damages under our rule allowing damages for injured feelings." *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245. The publication of a retraction, complete in character and conspicuous in position, might be found to have a material effect in diminishing the mischief caused by the libel, and thus substantially reduce the damages sustained by the person libelled. The retraction was properly admitted in evidence quite apart from the statute. The great weight of authority supports this view. *Smith* v. *Harrison,* 1 F. & F. 565. *Brown* v. *Brooks,* 3 Ind. 518. *Davis* v. *Marxhausen,* 103 Mich. 315. *Turton* v. *New York Recorder Co.* 144 N. Y. 144. *Taylor* v. *Hearst,* 118 Cal. 366. *Cass* v. *New Orleans Times,* 27 La. Ann. 214. *Lehrer* v. *Elmore,* 100 Ky. 56.

But even if it be assumed that the statute applies to a state of facts like the present, the prayers of the defendant that the plaintiff could not recover for mental suffering and was entitled only to nominal damages were properly refused. The significant words of the statute, after the provisions respecting retraction,

are " Unless the plaintiff proves actual malice or the want of good faith, or a failure either to retract or offer to retract as aforesaid, he shall recover damages only for the actual injury sustained, but in no action of libel shall exemplary or punitive damages be allowed." As before pointed out, the recovery of vindictive, exemplary or punitive damages has never been permitted in this Commonwealth. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238. Hence this part of the statute is at most declaratory of the common law. The early portion quoted is not clear in its meaning. It would have a plain purpose in jurisdictions where punitive damages are recoverable. This rule prevails in many, although not all, of the other States of the Union. In these States, " actual damage or injury " has been used in contradistinction to vindictive damages and has been construed to include damages to feelings and reputation as well as the grosser forms of injury. *Gatzow* v. *Buening*, 106 Wis. 1. *Ross* v. *Leggett*, 61 Mich. 445. *So Relle* v. *Western Union Telegraph Co.* 55 Texas, 308. *Western Union Telegraph Co.* v. *Lawson*, 66 Kans. 660. *Hearne* v. *De Young*, 132 Cal. 357. *Lord* v. *Wood*, 120 Iowa, 303. In this Commonwealth the damages recoverable in actions of tort have always included only compensation for those injuries which flow from the wrong as a natural result. But, in actions of libel and slander, such damages have invariably been held to include compensation for wounded feelings and loss of reputation. The unjustifiable publication of a libel might naturally cause suffering in one's feelings quite as poignant as physical pain and pecuniary loss through injury to one's reputation fully as severe as the loss of a limb. The one is as strictly actual damage as the other. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245. The part of § 92, which relates to retraction, made certain what had not been decided in this State, that such a publication subsequent to the bringing of an action is admissible in evidence. It is more reasonable to assume that the clause as to actual damage found its way into our statute through an excess of caution, than to assume a legislative intent to use the words " actual injury " in a sense foreign to our jurisprudence. Such an assumption would render the statute extremely hard to construe, and might in some aspects involve constitutional difficulties. See *Park* v. *Detroit*

*Free Press Co.* 72 Mich. 560. It may reasonably be interpreted as merely declaratory of the common law and emphasizing the fact that punitive damages are not here recoverable, which is the effect of the latter part of the same sentence. The charge of the trial judge that the plaintiff might recover damages for mental suffering and injury to his reputation was not error.

*Exceptions overruled.*