GLENN McAVEY *vs.* ALBANY REALTY COMPANY.

Suffolk. December 5, 1951. — January 21, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Negligence*, Contributory. *Landlord and Tenant*, Lights, Landlord's liability to tenant or his family or his invitee, Common passageway, Elevator.

Evidence of the circumstances in which one, rightfully using a long common passageway in a building leading to both a passenger elevator and a freight elevator while attempting to reach the passenger elevator at a time when the passageway was dark and he could not see because lights therein were not on as they had been on previous occasions when he had used it, was injured by falling into the open well of the freight elevator did not require a ruling that he was guilty of contributory negligence.

Evidence warranted findings that the owner of a business building in control of a common passageway therein owed to an employee of a tenant therein the duty of using reasonable care to keep the passageway lighted as it had been at the time of the letting to the tenant, and that injuries sustained by the employee through an absence of lighting

in the passageway which had existed for nearly an hour before he was injured were due to negligence on the part of the owner.

A finding that the gate of a freight elevator in a building had been tied up long enough so that the owner of the building in control of the elevator should have discovered and remedied such condition before an employee of a tenant fell into the open elevator well and was injured was not warranted by evidence merely that the gate was tied up at the time of the accident and that on the previous day it had been "up" when the elevator was at another floor.

TORT. Writ in the Superior Court dated September 20, 1946.

There was a verdict for the plaintiff at a trial before *Nagle*, J., and the defendant alleged exceptions.

*T. H. Mahony & E. F. Mahony*, for the defendant, submitted a brief.

*M. Michelson*, (*A. B. Cohen* with him,) for the plaintiff.

WILKINS, J. The plaintiff, an employee of a tenant in the defendant's building, was hurt on November 16, 1945, by stepping into an open freight elevator well. There was a verdict for the plaintiff.

The facts the jury could have found are these. The building, at the corner of Albany and Wareham streets, Boston, was purchased by the defendant the preceding year. The plaintiff's employer, a shoe company with two hundred employees, was a tenant at that time. There were six other tenants, and the defendant retained control of common passageways and of a freight elevator. On the first floor a long passageway led from the rear entrance on Wareham Street straight to the freight elevator on the far end at the right. At the far end on the left there entered at right angles from the left a second passageway across which through a doorway was a third passageway leading, in prolongation of the left side of the long passageway, to the passenger elevator. The shoe company had the use of the fourth and fifth floors, and, in common with other tenants, the use of the passageways and the lights in them. When the defendant purchased the building, there were lights in the same locations in the passageway as on the day of the accident. The defendant maintained no operator for the

freight elevator which was for the use of tenants and delivery-men. There was a gate to guard the well when the elevator moved up. If the elevator was not at the landing, the gate was supposed to be down. The defendant employed a janitor, whose duties included the care of the lights, passage-ways, and the freight elevator gate.

The accident occurred on Friday, a pay day. On other days the plaintiff used the front entrance on Albany Street, but on Friday noons he took the passenger elevator down to the first floor and proceeded out the long passageway to the Wareham Street entrance, returning the same way. On previous Fridays the electric lights in the passageway had been on, and he could see the freight elevator entrance "all right" and observe whether the gate was down if the elevator was not at the landing. On this Friday he went out at noon according to his custom. On this occasion there was no light in the long passageway near the freight elevator nor in the other passageways. Shortly before 1 P.M. he returned alone. The light near the Wareham Street entrance was "all right," and he could see very well, but it got duskier as he neared the elevators. He knew that the passenger elevator was in back, and as he went down the long passageway he touched the wall on his left from time to time as a guide. If he went straight doing this, he would get to the passenger elevator. When he reached the end of the wall, he could tell that there was then no wall. It was so dark there he could not see. He walked straight ahead a few steps, put out his left hand, and felt something like the metal on the doorway of the passenger elevator. He took another step and fell into the freight elevator well. The gate of the elevator was up, perhaps tied up by a rope in some manner. On leaving the building he had faced the light from the street entrance, a circumstance which helped him. On his return the light was behind him. On previous occasions when he had gone that way, whenever the freight elevator was not at the floor, the gate was down.

The defendant contends that the plaintiff was guilty of contributory negligence as matter of law. Reliance is

placed upon testimony of the plaintiff on cross-examination to the effect that, while he knew the passenger elevator was at the end of the passageway, he did not know particularly and definitely where it was; that at all other times he had been with somebody; that he asked some one inside the entrance where the passenger elevator was and was told straight ahead down the passageway; that it "was like going along a tunnel — it got darker"; that it was not pitch dark; that he guided himself by his left hand against the left wall; that if he had gone straight ahead after reaching the end of the wall on his left he would have been in the passageway where the passenger elevator was; that he must have stepped to the right a little way; that "it was so dark there that he couldn't see and if he could see he would not have walked into the freight elevator well; that in spite of the fact that he couldn't see and couldn't feel any wall to his left just before the accident, he took a step or two forward without knowing where he was going; that he didn't care where he was going as long as he 'got down'"; and that in so doing "he took a chance that the passenger elevator was in front of him, or the passageway in front of the passenger elevator." On redirect examination, the plaintiff testified that when he reached the end of the wall and continued, he was not conscious of any danger, but thought that he was walking straight ahead.

It could not have been ruled that the defendant had sustained the burden of proving the plaintiff was contributorily negligent. This is not a case for applying groping in the dark decisions. The jury could find that the plaintiff was not unfamiliar with the passageway. In the right of his employer he was entitled to use this approach to his place of employment. Until he reached the point of danger, he could rely to some extent upon the expectation that the gate would effectively guard an open elevator well. *Wright* v. *Perry,* 188 Mass. 268, 270. *Story* v. *Lyon Realty Corp.* 308 Mass. 66, 71. There was no evidence requiring a finding that, at some point on his course, he should have abandoned this approach and retraced his steps. *Marwedel* v. *Cook,* 154

Mass. 235, 238. *Sodekson* v. *Lynch*, 314 Mass. 161, 166. *Brooks* v. *Eliot Savings Bank*, 325 Mass. 159, 160. *Donnelly* v. *Larkin*, 327 Mass. 287, 292–293. The subject was adequately covered in the charge, and there was no error in denying the defendant's ninth request for instructions.[1]

The defendant's contention that there was no evidence of any duty to keep the passageway lighted for employees of tenants such as the plaintiff is not sustained by the record. The applicable principle has often been stated. The landlord's duty to a tenant and to those using the premises in the tenant's right is to exercise reasonable care to keep the part of the premises of which he has retained control in the condition with respect to safety in which they were, or appeared to be, at the time of the letting. *Silver* v. *Cushner*, 300 Mass. 583, 584–585. The rule is applicable to lighting. *Gallagher* v. *Murphy*, 221 Mass. 363, 366. *Donnelly* v. *Larkin*, 327 Mass. 287, 290. There was evidence of the defendant's negligence in this respect. The accident occurred shortly before 1 P.M. and there was testimony from the plaintiff and three fellow employees that the passageway was dark at noon.

There was no error in denying the defendant's motion for a directed verdict.

The judge in his charge stated that there was no evidence which would warrant a finding that the elevator was mechanically defective. The elevator apparently had a gravity gate, but the evidence did not disclose the details of its normal manner of operation. The judge further charged, subject to the defendant's exception, that the jury could find that the gate had been tied up for a sufficient length of time to enable the defendant to learn of the condition and to remedy it. In this we are constrained to conclude that there was error. There was evidence that the gate was tied up and that there was a rope on it at the time of the

---

[1] "9. If the plaintiff, just prior to the time of the accident, was in the dark and without knowing his position with reference to the freight elevator and without caring took a chance and continued walking and fell into the elevator well, he is guilty of contributory negligence and cannot recover."

accident.   There also was testimony merely that the gate was "up" at that time.   But the only other evidence as to the gate being out of position when the elevator was not at the ground floor was that at noon on the previous day the gate was "up" and the elevator was at a floor above.   This was not the equivalent of testimony that the gate was then tied up with a rope.

The defendant excepted to the admission of this testimony as to the position of the elevator the previous noon, as well as to the admission of testimony that the passageway was dark the previous noon, and that there were no lights at the end of the previous working day.   We do not consider these exceptions, as the precise questions they present may not arise again.   A police officer testified that shortly after the accident he observed that the bulb nearest to the freight elevator was broken.   Whether there was a broken bulb at other times when there may have been an absence of light does not appear.   Nor did the testimony reveal the manner in which the gate was tied up, if it was tied up.

*Exceptions sustained.*