Elinor Janney DETTERLINE,
Executrix[1] & another [2]
vs.
DOWNEAST AIRLINES, INC.

No. 40453

Superior Court/Suffolk, ss.
Commonwealth of Massachusetts

November 4, 1982

---

[1]Executrix under the will of William F. Detterline.
[2]Dorothy Anne Styer, also Executrix under the will of William F. Detterline.

**Thomas E. Cargill, Jr.,** counsel for plaintiff.

**John C. Kane, Jr., Jerome M. Leonard, Thomas H. Hannigan, Kenneth W. Erickson,** counsels for defendant

## RULINGS, ORDER AND MEMORANDUM OF DECISION ON DEFENDANT DOWNEAST AIRLINES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT III OF PLAINTIFFS' COMPLAINT

### Introduction and Background

This is a wrongful death action which arises out of a tragic accident which occurred to an aircraft owned and operated by defendant Downeast Airlines (Downeast) while enroute from Boston's Logan Airport to Knox County Regional Airport in Rockland, Maine. On May 30, 1979 that aircraft bearing the designation Downeast flight number 46 crashed while on its landing approach to the Rockland Airport killing William F. Detterline (the decedent) and others on board the aircraft. Plaintiffs Elinor Janney Detterline and Dorothy Ann Styer (plaintiffs) are executrices under the decedent's will and are domicilaries of Maine and Pennsylvania respectively. Downeast is incorporated under the laws of Maine.

In Count III of their complaint plaintiffs seek punitive damages under the Massachusetts, Wrongful Death statute, G.L. c. 229, § 2. Downeast's position is that the law of Maine where the accident occurred (the lex loci delicti) should apply. The applicable Maine Wrongful Death statute does not provide for punitive damages. See, **McKay v. New England Dredging Co.,** 92 Me. 454 (1899). Accordingly, Downeast has moved for partial summary judgment as to Count III of plaintiffs' complaint. In their opposition to the motion plaintiffs argue that on the uncontested facts of this case Massachusetts has an overriding interest in assuring the availability of punitive damages based upon the Commonwealth's policy articulated in its Wrongful Death statute to deter acts of gross negligence, malicious, willful and wanton conduct or reckless disregard of personal safety. Thus, the issue before this court at this time is whether Maine or Massachusetts law should control on the issue of punitive damages.

### Rulings and Memorandum of Decision.

A motion for summary judgment made pursuant to Mass. Rule Civ. P. 56 should be granted only when there is no dispute as to material facts and when one party is entitled to judgment as a matter of law. **Community Nat'l Bank v. Dawes,** 369 Mass. 550, 553-554 (1976). **Kesler v. Pritchard,** 362 Mass. 132, 134 (1972). It is not for this court at this stage of this action either to resolve factual issues or to weigh the credibility of affidavits where the facts asserted are in conflict. **Norwood Morris Plan Co. v. McCarthy,** 295 Mass. 579, 603 (1936).

Although neither party has submitted an affidavit setting out the facts of the accident, [3] Rule 56 does not mandate the

[3] Downeast has asserted that plaintiffs' affidavit in opposition to its motion is not appropriate first because it contains offers of proof to be made at trial by their counsel, see **O'Brion, Russell & Co. v. LeMay,** 370 Mass. 243, 245 (1976), and second because it relies on a National Safety Board Accident Report which will not be admissable at trial as a matter of public policy. 49 U.S.C. § 1441(e) (1976). This court agrees and therefore will not consider the fact purportedly found by the National Safety Board in its Accident Report that the pilot of ill-fated Flight 46 knew on his departure from Logan that it would be unsafe to land at Rockland Airport. It should be noted as well, however, that it is the moving party who usually submits an affidavit which sets out facts which show that he or she is entitled to summary judgment. See McCarthy and Cronin, Summary Judgment in Massachusetts, 65 Mass. L. Rev. 61, 62 (1980). Here Downeast's motion contains a bare request for the determination of applicable law supported solely by verified documents which indicate where the parties are domiciled.

submission of such an affidavit, Mass. R. Civ. P. 56(b), and a court may look instead to the pleadings, depositions, admissions and answers to interrogatories to determine whether or not there is a genuine factual issue for trial. Mass. R. Civ. P. 56(c). Consequently, in the absence of either an appropriate affidavit or a verified complaint from either party, this court will adopt for the purposes of this motion those facts clearly not in dispute between the parties as stated above.

It is undisputed that the crash of Downeast flight number 46 occurred in Maine. Traditionally, where a tort occurs outside of the state where suit is brought the forum court applies the **lex loci delicti** on the substantive law of the place where the tort occurred. Recently the Supreme Judicial Court affirmed that this rule would continue to control the choice of law in most multi-state tort actions. **Pevoski v. Pevoski**, 371 Mass. 358 (1979). The **Pevoski** court noted, however, that there may be cases in which there are "particular issues on which the interests of **lex loci delicti** are not so strong. Indeed on the particular facts of a case another jurisdiction may sometimes be more concerned and more involved with certain issues than the state in which the conduct occurred." **Id.** at 359-60. The Court in **Pevoski** then chose Massachusetts law on the issue of interspousal immunity where a Massachusetts domicilary was sued by his wife for injuries received in an accident in New York State. The Court reasoned that "New York has an undoubted interest in enforcing its traffic laws and in making its highways safe for travel but it has no legitimate interest in regulating the interspousal relationships of Massachusetts domiciliaries who chance to be injured within its borders." **Id.** at 360. See also **Saharceski v. Marcure**, 373 Mass. 304 (1977) (applying Massachusetts' Workers' compensation law barring recovery between fellow employees for injuries sustained in a Connecticut accident).

Applying the interest analysis adopted by **Pevoski** I rule that Maine law should govern on the issue of punitive damages. Given Maine's concern with regulating standards of conduct in its own airspace and with protecting a Maine corporation from excessive damage awards it cannot be said that Maine has an insubstantial interest in whether or not punitive damages should be available to claimants involved in accidents within its borders. Nor does it appear that Massachusetts has any particular interest in the award of punitive damages on the facts here. Neither of the plaintiffs are domiciled in Massachusetts and thus no citizen of this forum would benefit from the imposition of exemplary damages. Plaintiffs argue that one purpose of punitive damages would be to deter tortious conduct which arguably began at Logan Airport. Even accepting plaintiffs' contention that Flight 46's pilot took off from Logan knowing that landing conditions in Maine were unfavorable, there is nothing in **Pevoski** to alter the rule that the state where an alleged tort is completed controls on the issue of liability. See **Strogoff v. Motor Sales Co.**, 302 Mass. 345, 347 (1939). Parenthetically, I note the plaintiffs have identified in their complaint a number of Downeast's purportedly negligent acts most of which are alleged to have occurred in Maine. Consequently, to bootstrap a choice of law in this action on the basis of one unverified and isolated act in Massachusetts would make little sense.

**Order.**

It is therefore ordered that the motion of Downeast Airlines, Inc. for partial summary judgment on Count III of the plaintiffs' complaint be **allowed.**

**Paul J. Garrity**
**Justice of the Superior Court**